1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERCIA, ex rel., JASON VOSS, DRAKE OSBORN, and LISA OSBORN,<br><br>                    Plaintiff,<br><br>vs.<br><br>MONACO ENTERPRISES, INC, et al.,<br><br>                    Defendants.<br>_____<br>UNITED STATES OF AMERICA, ex rel., MAXIMILLIAN SALAZAR, III,<br><br>                    Plaintiff,<br>vs.<br><br>MONACO ENTERPRISES, INC, et al.,<br><br>                    Defendant. | No. 2:12-CV-0046-LRS<br><br><br>ORDER RE: MOTIONS TO DISMISS, MOTIONS TO STRIKE, AND MOTION TO CONSOLIDATE |

BEFORE THE COURT are several motions: 1) Defendants' Motion to Dismiss Relators Jason Voss and Drake and Lisa Osborn's Amended Complaint (**ECF No. 82**); 2) Defendants' Motion to Dismiss Relator Salazar's Qui Tam Complaint (**ECF No. 83**); 3) Relators Voss/Osborn's Motion to Strike Exhibits 1-4 of Defendants' Motion to Dismiss (**ECF No. 91**); 4) Relators Voss/Osborn's Motion

ORDER - 1

to Strike Hearing on Motion to Dismiss or For Continuance of Defendants' Summary Judgment Motion (**ECF No. 99**); and 5) Relators Voss/ Osborn's Motion to Consolidate  (**ECF No. 98**), in which Plaintiff/Relator Salazar, III Join (**ECF No. 100**). These matters have been fully briefed.  The court has reviewed the record, considered relevant legal authority, and is fully informed.

## I.    INTRODUCTION

Maximillian Salazar, III, Drake Osborn (his wife Lisa), and Jason Voss, pursue claims pursuant to the False Claims Act (hereinafter "FCA").   Salazar, Osborn, and Voss are former employees of Defendant Monaco Enterprises, Inc. ("MEI"), an entity providing customized security and fire detection alarm products, installation, and services to private and government customers, including U.S. Military bases worldwide.

The FCA enables the government to recover losses it has incurred as a result of fraud. "Its roots can be traced to the Civil War, when it was enacted in response to contractors who sold faulty weaponry, rancid food and unseaworthy ships to the government."   *United States v. Educ. Mgmt. Corp.*, 871 F.Supp.2d 433, 445 (W.D.Pa. 2012) (internal citation omitted). Because it would be difficult for the government to discover and prosecute all potential violations, the FCA provides a qui tam enforcement mechanism, which allows a private party (i.e., a "relator") to bring a lawsuit on behalf of the government and against an entity to recover money the government paid as a result of fraudulent claims.  As an incentive, relators are

entitled to keep a percentage of the proceeds from any judgment or settlement in their cases. *See* 31 U.S.C. § 3730(d)(1) and (2).  The statute contains mechanisms to minimize baseless suits brought by opportunistic relators. *Id*. The United States is entitled to intervene to prosecute the claim(s) on its own behalf, as has occurred in this case.  Although part of the *qui tam* provisions of the FCA, the statute also permits a private claim of retaliation under the whistleblower provision of the FCA, 31 U.S.C. § 3730(h), which was enacted to encourage any individuals knowing of Government fraud to bring that information forward.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Jason Voss and Drake Osborn formerly worked as Technical Services Representatives at MEI.   On January 12, 2012, Voss, Osborn and his wife, Lisa Osborn filed their original Complaint in this action under seal, asserting on behalf of the United States of America ("Government" or "United States") *qui tam* violations of the FCA against MEI and "John Does 1-99." They eventually filed an amended complaint alleging the following *qui tam* FCA violations:

1) MEI "fraudulently…overbilled for services" and goods "rendered in violation of the contract bid." (ECF No. 66, ¶3.10.1, p. 6, ll. 19-20; ¶3.31, p. 10, ll. 20-21).
2) MEI "fraudulently billed United States for services which should have been performed without any additional charge under the contract."  (*Id.*, ¶3.10.2, p. 6, ll. 21-24).
3) MEI "fraudulently reported to the United States hours which its employees did not work." (*Id.*, ¶3.10.3, p. 6, ll. 25-27).
4) MEI "fraudulently provided the United States with goods and services which did not meet the standards Monaco had contractually agreed to." (*Id.*, ¶3.10.4, p.76, ll. 1-4).

ORDER - 3

5) MEI "has systematically charged the United States for …goods never received." (*Id.*, ¶3.31, p. 10, l. 20).

6) MEI has "charged excessive rates under inflated classifications for the services of Monaco employees and for goods provided under contracts with the United States." (*Id.*, ¶3.33, p. 11, ll. 1-4).

7) MEI has "not paid the appropriate prevailing wages to its employees while charging the United States fixed rates under GSA contracts." (*Id.*, ¶3.34, p. 11, ll.5-8).

8) MEI "fraudulently billed the United States for services not actually rendered."

In addition, Drake Osborn asserts a private claim for retaliation under the False Claims Act, 31 U.S.C. § 3730(h).

On March 29, 2012, Maximillian Salazar, III, a former Applications Engineer at MEI, filed a complaint in a separate case for wrongful termination and retaliation also brought under § 3730(h). *See* EDWA Cause No. 2:12-CV-186-LRS.   After mistrial, this case has been rescheduled for jury trial in July 2016.

On June 28, 2012, Salazar filed a separate *qui tam* Complaint in Cause No. 12-CV-453-LRS (ECF No. 1) asserting a number of claims under the FCA against MEI including:

1) "Disproportionate inflation of component parts pricing (ECF No. 1, §5.6.1, p. 6, 11.4-5" [the "Parts claim"] ;

2) "Mislabeling products to present the false impression MEI was the original equipment manufacturer (OEM)(*Id.*)[the "Mislabeling claim"];

3) "Fraudulent billing for travel and per diem expenses (*Id.*, p. 6 §5.6.2, ll. 15-16)" [the "Billing Claim");

4) "Misrepresenting the Company's resources and capabilities to induce the Government into contracts (*Id.*, §5.6.3, p.6, ll.22-23)"[the "Resource claim"];

5) "Misrepresenting Government regulatory compliance in contract certifications. (*Id.* §5.6.4, p.7, ll.4)" [the "Compliance claim"];

ORDER - 4

6) Violating the Davis-Beacon Act by "manipulat[ing] job descriptions/classifications in order to "avoid paying prevailing rates to increase their profit margin" (§5.6.2, p. 6, ll.14-22). [the "Wages Claim"]; and

7) Concealing deceptive charging practices with regards to travel costs (§1.1) [the "Travel Cost claim"].

*See* ECF No. 92 at 6.

Service of the two qui tam Complaints was delayed for an extended period of time to give the United States the opportunity to decide whether to intervene in the actions. On May 11, 2015, the Government filed its Notices of Election to partially intervene. On the Voss/Osborn Complaint, the United States intervened on the single allegation asserted against MEI that the United States "fraudulently billed the United States for services not actually rendered." (ECF No. 45). It declined intervention on the remaining allegations, including those against unidentified John Doe Defendants. *Id*. In regards to the Salazar *qui tam* Complaint, the Government intervened on the single allegation of concealing deceptive charging practices with regards to travel costs, and declined to intervene on the remainder of the allegations. (12-CV-453, ECF No. 27).

On July 20, 2015, the court consolidated the Salazar qui tam action, Cause No. 12-CV-453-LRS, and the instant case and granted leave to the United States to file a single complaint in intervention. (ECF No. 40).

On October 9, 2015, the Government filed a 105-page Intervenor Complaint in Partial Intervention, naming two additional Defendants: MEI Chief Operating Officer Roger Barno and MEI President and CEO Eugene Monaco. The Intervenor

ORDER - 5

Complaint asserted violations of the FCA and common law theories including (a) breaches of contract; (b) unjust enrichment, and (c) payment by mistake.  A 120-page Amended Intervenor Complaint was filed February 26, 2016 (ECF No. 79).

After the Government intervened, the Voss/Osborn relators filed their operative Amended Complaint (ECF No. 66), reasserting all claims (including the intervened claim) and incorporating by reference a large number of allegations in the Intervenor Complaint.  Like the Intervenor Complaint, the Relators' Amended Complaint also names Roger Barno and Eugene Monaco as Defendants.   It also clarified that the claim for retaliation under 31 U.S.C. § 3730(h) is that of relator Drake Osborn, who asserts he was threatened and denied permission to attend a medical appointment on April 4, 2011, after he had "raised issues of prevailing wage, fraud, and illegality in regards to Monaco's actions verbally" and in emails sent on March 28, 20011 and March 30, 2011.

By automatic operation of the FCA, the Government's Amended Complaint in intervention becomes the operative complaint as to all claims in which the government has intervened, and relators may not litigate these claims.  31 U.S.C. § 3730(c)(1) ("If the Government proceeds with the action, it shall have the *primary* responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action. Such person shall have the right to continue as a party to the action ....").  Relators remain a party to the Government's intervened claims and continue to have rights to participate in those claims under 31 U.S.C. § 3730(c)(1)

ORDER - 6

and to receive any relator's recovery permitted by 31 U.S.C. § 3730(d), subject to the limitations of the FCA and the facts and circumstances of a particular case.

The Relators' Complaints continue as the operative complaints as to all *non-intervened* claims. Defendants' Motions to Dismiss seek complete dismissal of both Plaintiffs'/Relators' Complaints with prejudice, advancing the primary argument that the Complaints contain no plausible factual allegations and fail to meet Rule 9(b)'s particularity requirement.

## III.   VOSS/OSBORN MOTION TO STRIKE HEARING PURSUANT TO FED.R.CIV.P. 12(D)

On the eve of the Motion hearing date, after the completion of briefing on the Motions to Dismiss, and after Plaintiffs Voss/Osborns failed to file a Reply in support of their Motion to Strike, Voss/Osborns belatedly filed a parting shot "Motion to Strike Hearing" (ECF No. 99). The Motion contends the Defendants have converted their Motion to Dismiss into a "premature" Motion for Summary Judgment, it cites several cases in further argument on the motion to dismiss, and attaches emails they have separately argued the court should strike and not consider. The substance of the Motion to Strike is untimely and appears to be a belated attempt to make additional argument related to the Motion to Dismiss. Motions intended to delay or circumvent the timeframes in Local Rule 7.1, are disingenuous at best and violate the spirit of Federal Rule of Civil Procedure 1. The "Motion to Strike Hearing" (ECF No. 99) is **DENIED.**

ORDER - 7

## IV.    LEGAL STANDARD

## A. Fed.R.Civ.P. 12(b)(6)

Defendants seek dismissal of the Relators' Complaints under Federal Rule of Civil Procedure 12(b)(6). To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (*quoting Twombly,* 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.' " *Id.* (*quoting Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, "bare assertions ... amount[ing] to nothing more than a 'formulaic recitation of the elements' ... are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. A court is "free to ignore legal conclusions,

ORDER - 8

unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Serv. v. Am. State Bank*, 339 F.3d 764, 767 (8th Cir.2003) (citation omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." S*tudent Loan Mktg. Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D.Cal.1998). In practice, "a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (*quoting Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984)). To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. California Collection Serv. Inc*., 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

To determine whether the complaint contains a statement showing that the pleader is plausibly entitled to relief, the court first identifies the elements of the plaintiff's claim and then determines whether those elements can be proven on the alleged facts. When conducting this analysis, the court accepts the alleged factual allegations in the complaint as true, construes the pleadings in the light most favorable to the plaintiff, and considers judicially noticeable documents or contracts referenced in the complaint.  The court may disregard factual allegations that are contradicted by matters properly subject to judicial notice or filed exhibits. *Sheppard*

*v. David Evans & Assocs.*, 694 F.3d 1045, 1051 (9th Cir. 2012); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001*); see Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001) *overruled in part on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002). (identifying what documents a court can consider at the Rule 12(b)(6) stage).

B. **Fed.R.Civ.P. 8**

Rule 8 requires a showing, rather than a blanket assertion, of entitlement to relief, and "contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is entitled to it." *Twombly*, 550 U.S. at 555 n. 3 (internal alterations, citations, and quotations omitted). The Supreme Court has explained that a complaint need not be "a model of the careful drafter's art" or "pin plaintiff's claim for relief to a precise legal theory" so long as it states "a plausible 'short and plain' statement of the plaintiffs' claim." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

C. **Fed.R.Civ.P. 9(b)**

The more rigorous pleading standard in Fed.R.Civ.P. 9(b) applies to FCA claims because they allege fraud. *Cafasso, U.S. ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).  Accordingly, Plaintiffs must "state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). To satisfy this standard, the fraud-based claims must "be specific enough to give defendants notice of the particular misconduct so that they can defend against

the charge and not just deny that they have done anything wrong." *Vess v. CibaGeigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation and citation omitted). This includes "the who, what, when, where, and how of the misconduct charged," as well as "what is false or misleading about a statement, and why it is false." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir .2010) (internal quotation marks and citations omitted). A party may, however, plead allegations of "[m]alice, intent, knowledge, and other conditions of a person's mind more generally." Fed.R.Civ.P. 9(b).   In the FCA context, a Plaintiff-Relator "is not required to allege all facts supporting each and every instance" of fraud. *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010) (internal quotation marks omitted). Rather, a relator may use "representative examples" or "allege 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.' " *Id*. at 998–99 (*quoting United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)).

## V.    ANALYSIS --MOTIONS TO DISMISS

### A. False Claims Act

#### 1.  Four Elements

The FCA creates liability for any person who "knowingly presents or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. §

3739(a)(1)(A), or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* § 3739(a)(1)(B).

A claim is "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property," presented to the United States or to a contractor, if the money or property is to be spent or used on the United States' behalf. 31 U.S.C. § 3729(b)(2). The elements of an FCA violation under §3729 are: (1) a false statement or fraudulent course of action (falsity element), (2) that is material (materiality element), and (3) made with knowledge of that falsity (scienter element), that causes (4) the government to pay out money. *United States v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011).

### 2. Falsity and Theories of FCA Liability

As the statute itself gives little guidance, courts have recognized several different categories of actionable FCA claims, all of which rely upon the same four essential elements of FCA liability. There are factually false claims and legally false claims. Factually false claims are the archetypal *qui tam* action where the government payee misrepresents what goods or services that it provided, overcharges, or requests reimbursement for good or services it never provided. *See generally*, *U.S. ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1170-1171 (9th Cir. 2006). Legally false claims, or "false certification claims," are when the claimant knowingly falsely certifies that it has complied with a statute or regulation the compliance with which is a condition for Government payment. *Id.*

ORDER - 12

Claims pursued under a false certification theory may be express or implied. An express false certification occurs when a defendant certifies compliance with a law, rule, or regulation as part of the process through which the claim for payment is submitted. *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir.2010). An implied false certification theory is premised on the notion that submitting a claim itself implies compliance with governing requirements. Liability occurs when an entity "submits a claim for payment that makes specific representations about the goods or services provided, but knowingly fails to disclose…noncompliance with a statutory, regulatory or contractual requirement" which is "material to the Government's payment decision." *Universal Health Services, Inc. v. United States*, (2016).

The Ninth Circuit has also recognized FCA liability under the theory of promissory fraud or fraud in the inducement. *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1172 (9th Cir.2006). Whereas false certification claims allege that a contractor certified that it *did* comply with a statute, regulation or contract term when it knew at the time that it did not do so, the promissory fraud theory alleges that a contractor, in seeking to obtain a contract or extension of government benefit, represented that it *would* do something that it planned not to do or that it used false statements or fraudulent conduct to secure the contract or benefit.

### 3.  Scienter Element

Although the FCA is targeted at fraud, its scienter requirement does not require specific intent to defraud, but rather that a defendant have actual knowledge, deliberate ignorance of the statement, or reckless disregard as to the truth of the statement. *Id*. § 3729(b)(1). "Innocent mistakes, mere negligent misrepresentations and differences in interpretations" do not constitute knowingly false statements. *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996).

### 4. Materiality Element

In its recent unanimous decision in *Universal Health Services, Inc v. U.S.*, 2016 WL 3317565 (June 16, 2016), the U.S. Supreme Court has reinforced the necessity of pleading facts to support allegations of materiality under Rule 9(b). Limits on FCA liability are to be addressed through strict enforcement of the materiality and scienter requirements. The materiality standard is a "familiar and rigorous one" meaning "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Id*. at *12, n. 6. According to the Court, materiality "cannot be found where noncompliance is minor or insubstantial." *Id*. at *12. In the implied certification context, it is insufficient that the Government made the statutory, regulatory or contractual requirement a condition of payment or would have the option to decline payment if it knew of the noncompliance. *Id*. "Proof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to

ORDER - 14

pay claims in the mine run of cases based on noncompliance with the particular

statutory, regulatory, or contractual requirement." *Id*.

**B. Salazar Complaint: FCA Claims**

Salazar's Complaint asserts the following six non-intervened FCA claims:

1) "Disproportionate inflation of component **parts pricing** (ECF No. 1, §5.6.1, p. 6, 11.4-5" [the "Parts Claim"] ;
2) "Mislabeling products to present the false impression MEI was the original equipment manufacturer (OEM)(*Id*.)[the "Mislabeling Claim"];
3) "Fraudulent **billing** for travel and per diem expenses (*Id*., p. 6 §5.6.2, ll. 15-16)" [the "Billing Claim"];
4) "Misrepresenting the Company's **resources and capabilities** to induce the Government into contracts (*Id*., §5.6.3, p.6, ll.22-23)"[the "Resource Claim"];
5) "Misrepresenting Government **regulatory compliance** in contract certifications. (*Id*. §5.6.4, p.7, ll.4)" [the "Compliance claim"];
6) Violating the Davis-Beacon Act by "manipulat[ing] job descriptions/classifications in order to "avoid paying prevailing rates to increase their profit margin" (§5.6.2, p. 6, ll.14-22. [the "Wages Claim"]

(ECF No. 92 at 6).

Defendant MEI contends Salazar's Complaint contains "no plausible factual allegations against MEI."  (ECF No. 94 at 2). Specifically, Defendant contends Salazar makes "bare allegations" without identifying any "actual sale, invoice, particular customer, specific contract or provision, or specific product that MEI allegedly overcharged." (ECF No. 94 at 7).  Defendant contends the Complaint lacks sufficient detail regarding the time, the people, the particular job, the contract, the dollar amount and that Salazar lacks personal knowledge regarding any of the attendant circumstances required to adequately plead violations under the FCA.

Defendant claims Salazar is attempting to create a "separate and costly additional discovery front – based on unsupported and implausible allegations that have been reviewed and declined by the United States…"  (ECF No. 94 at 10).

Salazar has not amended his initially-filed Complaint. Recognizing the lack of particularized facts, Salazar's Response to the Motion to Dismiss relies upon the allegations in the Government's First Amended Complaint in Intervention and requests leave to amend in the event this court finds the Complaint deficient.  Salazar suggests the 120-page Intervenor Complaint "refined" (ECF No. 92 at 8) his claims and furnishes the necessary factual basis for the alleged multi-faceted alleged scheme of fraud which were regular business practices.   The Response in essence concedes that as it stands now, the Salazar Complaint cannot on its own survive scrutiny under Rule 9(b).  The Complaint cannot be re-pleaded in a brief and must be capable of standing on its own as to all non-intervened claims. Fed.R.Civ.P. 10(c) permits the Plaintiff to incorporate by reference into its own pleading "*statement[s]*" made in other pleadings so as to encourage pleadings that are short, plain statements in accordance with Fed.R.Civ.P. 8(a).   This rule can be especially useful in multiparty litigation when the presence of common questions often results in the pleadings of the parties on the same side of the litigation being virtually identical. However, no rule permits wholesale incorporation of *entire* pleadings. Such a practice violates the requirements of Fed.R.Civ.P. 8(a) requiring a short and plain

statement of the claim and requires the parties and court to guess which allegations are material.

Salazar's style of pleading makes it impossible to identify with any clarity either his claims or the facts which support them.  As explained below, none of Salazar's FCA claims satisfy Rule 9(b).  These claims are DISMISED.  However, the court grants leave to amend as there is no current indication that such leave would be futile. *Knevelbaard Dairies v. Kraft Foods, Inc*., 232 F.3d 979, 983 (9th Cir. 2000)( an order granting a motion to dismiss "must be accompanied by leave to amend unless amendment would be futile.").

### 1.  Claims 1-3 – Factually False Claims

Salazar's parts claim, mislabeling claim, and fraudulent billing claim, are types of factually false claims. The complaint alleges MEI inflated component parts pricing by failing to reveal a bulk discount on parts such as monitors and other electronics; mislabeled products giving the impression that MEI was the original manufacturer; and overbilled for travel expenses.   All three of these claims lack sufficient particularity in that they fail to identify the allegedly false statement, the materiality of the statement, or allege facts to establish a causal link between the false statements and payment or approval of a claim.

### 2.  Claim 4 –Resource and Capabilities Claim

Salazar's fourth claim asserts that MEI misrepresented its resources and

capabilities in grant and bid proposals in order to induce the government in awarding MEI the bid.  As an example, the Complaint alleges proposed target completion dates "were so far from reality."  (ECF No. 1 at 7).  Though promissory fraud is a legitimate claim under the FCA, it is difficult to sustain.  This claim is vague and lacks facts satisfying all four essential elements of FCA liability.  There are no allegations pertaining to MEI's knowledge, the materiality of the allegedly false proposed completion dates, or the causal chain leading to a call on the government fisc.

### 3.  Claims 5 and 6 - False Certification Claims

Salazar's Complaint at §5.6.4 also alleges that MEI misrepresented regulatory and contractual compliance in contract certification.  In Response to the Motion to Dismiss, Salazar has withdrawn the claim based upon alleged misrepresentations of MEI's "security health," at p. 5.6.4, p. 7, ll. 5-9.  (ECF No. 92, at 5 n. 1).  This aspect of Salazar's compliance claim is deemed **DISMISSED** and shall not be re-pleaded in any amended pleading.  The Complaint also alleges that MEI misrepresented that it was "in compliance with required security clearance restrictions as required by GSA and DoD contracting guidelines." (ECF No. 1 at 5.6.4, p. 7, ll.6-9).  The single allegation does not satisfy Rule 9(b), nor furnish the required elements of a false certification claim under the FCA.

Salazar's sixth claim contends that MEI falsely certified to the Government that it was paying wages in compliance with the Davis-Bacon Act (a protective labor

law requiring government contracts to state minimum wages to be paid to various classes of laborers and submit certified payroll reports), when in fact it was paying its employees less by manipulating job descriptions and travel policies.   In his Response, Salazar cites *United States ex rel. Windsor v. DynCorp. Inc.*, 895 F.Supp. 844 (E.D.Va.1995), a case which *dismissed* FCA claims based on allegations of misclassified employees because Davis-Bacon Act classification disputes are solely the province of the Department of Labor.   The viability of this claim depends on whether the "falsity" of the false statement can be determined without need for the interpretation and application of Davis-Bacon Act classification regulations. *See e.g., United States v. Greenberg*, 237 F.Supp. 439 (S.D.N.Y.1965) (where it was undisputed "that the wages certified to in [the Davis–Bacon Act payroll] reports were higher than the wages actually paid," contractor was liable under FCA).   The parties did not address this question.   Any amendment of the Complaint shall plead this court's jurisdiction to resolve any FCA claim based upon alleged violations of the Davis-Bacon Act.

**C. Salazar Complaint: Non-FCA Causes of Action**

Defendants also seek dismissal all non-FCA causes of action asserted in the Salazar Complaint, including conspiracy (6.2.3)[1], "Violations of the Federal

---

[1]   Although FCA has a conspiracy provision, § 3729(a)(3), Salazar does not plead a conspiracy claim under the FCA.

Acquisition Regulations"(6.2), and violation of the Davis-Beacon Act (6.4). Salazar

does not plead these independent causes of action. Salazar concedes this in his

Response. The only causes of action in the Complaint fall under the FCA, as

reflected by the heading of Section VI. Accordingly, there are no non-FCA causes

of action in the Salazar Complaint for the court to consider.

**D. Voss/Osborn Qui Tam Claims**

Defendants' second Motion to Dismiss likewise seeks dismissal of all non-

intervened qui tam claims asserted in the Voss/Osborn Amended Complaint which

are as follows:

1) MEI "fraudulently…overbilled for services" and goods "rendered in violation of the contract bid." (ECF No. 66, ¶3.10.1, p. 6, ll. 19-20; ¶3.31, p. 10, ll. 20-21).
2) MEI "fraudulently billed United States for services which should have been performed without any additional charge under the contract." (*Id.*, ¶3.10.2, p. 6, ll. 21-24).
3) MEI "fraudulently reported to the United States hours which its employees did not work." (*Id.*, ¶3.10.3, p. 6, ll. 25-27).
4) MEI "fraudulently provided the United States with goods and services which did not meet the standards Monaco had contractually agreed to." (*Id.*, ¶3.10.4, p.76, ll. 1-4).
5) MEI "has systematically charged the United States for …goods never received." (*Id.*, ¶3.31, p. 10, l. 20).
6) MEI has "charged excessive rates under inflated classifications for the services of Monaco employees and for goods provided under contracts with the United States." (*Id.*, ¶3.33, p. 11, ll. 1-4).
7) MEI has "not paid the appropriate prevailing wages to its employees while charging the United States fixed rates under GSA contracts." (*Id.*, ¶3.34, p. 11, ll.5-8).

Like Salazar's Complaint, Defendants contend each of the Voss/Osborn

claims do not meet Rule 9(b) because it does not allege particular circumstances of

"the contracts implicated,…the goods never received, nor do they identify any of the goods allegedly overcharged, the rates or classifications allegedly inflated, or the dates, times or places at which the purported trainings were conduct," or "even a general time period during which any of this alleged misconduct occurred…" (ECF No. 82 at 12). Defendants also contend the claims are not plausible, and that the absence of facts or legal basis for these claims can be inferred from the fact the Government ultimately declined to intervene.

The Relators' Response does not attempt to identify their claims and direct the court to facts supporting them. Instead they generally contend the Amended Complaint satisfies Rule 9(b) because of a single paragraph incorporating by reference hundreds of allegations contained in the United States' Intervenor Complaint. Specifically, paragraph 3.10.6 of the Voss/Osborn Amended Complaint (ECF No. 66) states: "The allegations in the United States Complaint in Partial Intervention filed October 9, 2015, paragraphs 4.1-5.181 and paragraphs 5.216-5.289 are hereby incorporated by reference in support of paragraph 3.10.4 above." Paragraph 3.10.4 pertains only to the claim that MEI "fraudulently provided the United States with goods and services which did not meet the standards Monaco had contractually agreed to." Relators' brief states they will be filing a motion for leave to file a *second* amended complaint "that will render the Motion to Dismiss moot" (ECF No. 90 at 5), however no such motion has been filed.

Rules 8, 9(b), and 10 all work together to require the pleader to present claims discretely and succinctly so that the adversary can frame a responsive pleading and the court can determine which facts support which claims and whether the pleading states a claim upon relief can be granted.  The single paragraph incorporating hundreds of allegations, without any discussion of the facts contained therein and how they relate to the claims asserted results in a pleading that is confusing, conclusory, and impossible to answer or analyze.  While the court may consider the Government's pleading in determining whether the Relators' pleading is sufficient under the pleading rules, it does not serve as a substitute pleading on the non-intervened claims.  The Amended Complaint fails to provide the clarity and factual support required to state claims under the FCA, including the claims against individual corporate officials Mr. Monaco and Mr. Barno.  Neither this court nor the Defendants are required to guess which claims are being asserted by whom, against whom, and which allegations form the material basis for each claim.

Relators will be granted leave to amend their claims.  This is not a case where Relators have demonstrated they lack enough information to formulate their claims to meet the Rule 9(b) standard. Any amended pleading should separately identify each claim and make clear connections between specific allegations and defendants.

**E. Osborn § 3730(h) Retaliation Claim**

   *1.  § 3730(h) Claim against MEI*

The FCA protects employees from being "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment ... because of lawful acts done by the employee ... in furtherance of an [FCA] action ...." 31 U.S.C. § 3730(h).  There are three elements that a plaintiff must prove in any § 3730(h) cause of action: "1) the employee must have been engaging in conducted protected under the Act; 2) the employer must have known that the employee was engaging in such conduct; and 3) the employer must have discriminated against the employee because of [his] protected conduct." *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir.1996), *cert. denied*, 519 U.S. 1115 (1997).

The Amended Complaint contends Osborn's medical leave permission was withdrawn and he was "terminated[2], harassed and retaliated against" by MEI and Eugene Monaco after he "raised issues," "complaints," of "refunds, prevailing wage, and fraud/illegality to the United States and errors as to Monaco's compliance with prevailing wage statutes and other federal statutes."  (ECF No. 66 at 41, 4.7).  He claims he raised these issues "verbally *and* via email." (ECF No. 66, 4.9, 4.11, p.

---

[2]  Defendants contest the allegation that Osborn was terminated.  This contested fact need not be resolved at this stage of the proceeding, as Osborn alleges alternate forms of retaliation.  Accordingly, the court does not consider Exhibit 4 in ruling on the Motion to Dismiss and therefore, need not rule on the Motion to Strike the exhibit.

14)(emphasis added).  As for the verbal interactions pleaded, the first alleges Osborn asked a Monaco Department Head "why the United States was being charged for field engineering services not actually being performed."  (ECF No. 66 at 9, 3.22). In the second interaction, Osborn claims he "raised the issue" with "Monaco" (it is unclear whether this is a reference to Eugene Monaco or MEI) of "refunding approximately $12,800 charged for Field Engineer work," and that "Monaco" told him "never to raise the issue of refunding money to the United States again on any job." (ECF No. 66 at 10, p. 3.27, 3.28).  The Amended Complaint also claims emails were "sent on March 28th 2011 and March 30th 2011," but does not describe their content or to whom they were sent.  (ECF No. 66, p. 14).

MEI contends Osborn's retaliation claim fails to allege he was engaged in any protected conduct and thus have not asserted a "motive related to an FCA violation." (ECF No. 97 at 9).  Defendants attach copies of emails as exhibits to their Motion and contend they show mere "personal inquiries about [Osborn's] pay," which do not qualify as or provide notice of protected activity.  (ECF No. 82, Exs. 2, 3). Relators have moved to strike these exhibits for lack of foundation and hearsay. (ECF No. 91).  The court need not consider these external materials for purposes of this Motion, as the alleged protected activity encompasses not only emails but also *verbal* complaints.

Internal complaints that concern false or fraudulent claims for payment submitted to the government are protected activity under the FCA. See *United States ex rel.*

*Yesudian v. Howard Univ.*, 153 F.3d 731, 741 n. 9 (D.C.Cir.1998) ("[I]nternal reporting of false claims is itself an example of a protected activity."). However, Osborn's retaliation claim fails to sufficiently plead the elements of a FCA retaliation claim with sufficient particularity. Osborn fails to describe the "who, what, when, and where" of his claim. In order to describe the alleged protected activity, a Plaintiff must describe the substance of his written complaints, the timing of the verbal complaints, and to whom the complaints were made. As previously indicated, one should not have to sift through allegations or speculate as to the factual basis for a claim. The Amended Complaint fails to state enough facts to support the required elements that Osborn was engaged in protected activity or that he made internal reports in a manner sufficient to infer knowledge on the part of MEI. Accordingly, Osborn's retaliation claim against MEI is **DISMISSED** with **LEAVE TO AMEND**. MEI has not demonstrated futility.

### 2. § 3730(h) Claim against Individual Defendants

In recent years, courts have split on whether § 3730(h), which was amended in 2009, allows for causes of action against individual defendants. *See Lipka v. Advantage Health Group, Inc.*, No. 13–cv–2223, 2013 WL 5304013, at *10–11 (D.Kan. Sep. 20, 2013) (setting forth split of authority). There are a few early cases which have found individual liability in the statute have based their holdings on the fact that the 2009 amendment removed the word "employer" from the statutory language. *See U.S. ex rel. Moore v. Cmty. Health Servs., Inc.*, No. 3:09–cv–1127,

2012 WL 1069474, at *9 (D.Conn. Mar. 29, 2012) ("Section 3730(h) following the 2009 amendments ... conspicuously omits the word 'employer.'"). However, those courts which have analyzed the relevant legislative history have concluded that the amendment, which did not reference individual liability, was not intended to overturn years of case law holding that the statute did not apply to individuals. *See, e.g, Aryai v. Forfeiture Support Assocs.*, No. 10–cv–8952, 2012 WL 10911406, at *7 (S.D.N.Y. Aug. 27, 2012) ("[I]f Plaintiff is correct, Congress overturned this line of authority by negative implication. That seems unlikely given that Congress could have simply replaced 'employer' with 'any person.' "); *Wichansky v. Zowine*, No. CV–13–01298, 2014 WL 289924, at *3 (D.Ariz. Jan. 24, 2014) ("Cases that examine the legislative history have concluded that the 2009 amendments were intended to retain the requirement that an FCA defendant have some employer-type relationship with the plaintiff."); *United States ex rel. Fryberger v. Kiewit Pac. Co.*, 41 F. Supp. 3d 796, 814 (N.D. Cal. 2014) (citing cases); *Lampenfeld v. Pyramid Healthcare, Inc.*, 2015 U.S. Dist. LEXIS 26552, *10, 2015 WL 926154 (M.D. Pa. Mar. 4, 2015) ("Although a few early cases came to the conclusion that this was a deliberate maneuver and thereby allowed claims to proceed against individual supervisors..., a consensus has now emerged among the majority of courts to decide this issue that individual liability does not exist under the amended § 3730(h).").

Upon consideration, the court finds the latter line of cases persuasive and holds that § 3730(h) does not provide a cause of action against individual non-employer

defendants. Osborn has not argued otherwise or suggested that he was in an employer-employee relationship with Roger Barno or Eugene Monaco. Accordingly, Osborn's retaliation claim against the individually named Defendants is **DISMISSED**.

## VI.    MOTION TO CONSOLIDATE

On May 20, 2016 and while the motions to dismiss were pending, the Voss/Osborn Plaintiffs filed a Motion requesting consolidation of Salazar's separately filed § 3730(h) retaliation case, *a case in which they are not parties*, with the instant consolidated cases. Salazar joins in the Motion.

The court has **<u>twice</u>** carefully and thoroughly considered – and rejected -- Salazar's request to consolidate his retaliation and qui tam cases. *See* Cause No. 2:12-CV-186-LRS, ECF Nos. 274, 311. The second ruling reconsidering the issue came just after the court reluctantly vacated the trial date. Plaintiffs contend the court's prior Orders are "stale" because there were entered in 2014 when the *qui tam* cases were in a different posture. The court finds the same rationale set forth in its two prior Orders applies today. Clearly, one of the purposes of Federal Rule of Civil Procedure 42, to avoid delay, "would not be met by consolidating these matters." EDWA Cause No. 2:12-CV-186-LRS, ECF No. 274 at 5. This month, the instant consolidated case is set for an initial Scheduling Conference; Salazar's retaliation case is scheduled for jury trial. There has been extensive preparation for this trial, delayed already 9-months after a mistrial. Whereas the §3730(h) claim involves a

ORDER - 27

private right of action focused primarily on a meeting in October 2011 and do not require proof of fraud, the *qui tam* claims do. They are complex, cover an expansive time period, and are pursued in the broader public interest with the United States a party. The court does not believe consolidation would conveniently serve anyone, or promote the just and efficient conduct of litigation. This court has a duty to attempt to facilitate the "adjudication of civil cases on the merits, monitor discovery, improve litigation management, and ensure just, speedy, and inexpensive resolutions of civil disputes." 28 U .S.C. § 471.  Accordingly, the Motions to Consolidate (ECF Nos. 98, 100) are **DENIED**.

## VII.  CONCLUSION AND ORDER

For the reasons stated above, **IT IS HEREBY ORDERED:**

1. Defendants' Motion to Dismiss Relators Jason Voss and Drake and Lisa Osborn's Amended Complaint (**ECF No. 82**) is GRANTED IN PART, but without prejudice and WITH leave to amend by not later than **July 31, 2016**.  Osborns may not attempt to re-plead the retaliation claim against the individually named Defendants.

2. Defendants' Motion to Dismiss Relator Salazar's Qui Tam Complaint (**ECF No. 83**) is GRANTED IN PART, but without prejudice and WITH leave to amend by not later than **July 31, 2016**.

3. Relators Jason Voss and Drake Osborn's Motion to Strike Exhibits 1-4 of Defendants' Motion to Dismiss (**ECF No. 91**) is **DENIED** as unnecessary and moot.

4. Relators Motion to Strike Hearing on Motion to Dismiss or For Continuance of Defendants' Summary Judgment Motion (**ECF No. 99**) is **DENIED**.

5. Relators Voss and Osborns' Motion to Consolidate (**ECF No. 98**), in which Salazar has separately joined (**ECF No. 100**) are **DENIED**.

The Clerk is hereby directed to enter this Order and furnish copies to counsel.

DATED this 1st day of July, 2016.

*s/Lonny R. Suko*

_____

LONNY R. SUKO
SENIOR UNITED STATES DISTRICT JUDGE